IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN THE DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE L. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 3112 |
| | ) | |
| VILLAGE OF CRETE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Willie L. Hill filed the present four-count Second Amended Complaint alleging violations of his Fourth Amendment rights against the Village of Crete, Illinois, Officer Michael C. Buzan, and certain unnamed police officers. *See* 42 U.S.C. § 1983. In a prior order, the Court dismissed Count IV of the Second Amended Complaint which alleged a defamation per se claim against Shell Oil Company. Accordingly, Shell Oil Company is no longer a Defendant to this lawsuit. Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

**I.      Northern District of Illinois Local Rule 56.1**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to

provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004); *see also Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008). Local Rule 56.1(b)(3)(B) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber,* 527 F.3d at 643-44.

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Moreover, the Court may disregard statements and responses that do not properly cite to the record. *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005). With these standards in mind, the Court turns to the relevant facts of the case.

## II.     Relevant Facts

Plaintiff Willie Leo Hill resides at 7150 Cyril Court in Chicago, Illinois. (R. 70-1, Defs.' Rule 56.1 Stmt. Facts ¶ 3; R. 81-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 3.) Defendant Officer Buzan is a sworn police officer for the Village of Crete with over 19 years of experience in police work. (Defs.' Stmt. Facts ¶¶ 5, 6; Pl.'s Stmt. Facts ¶ 5.) Defendant Village of Crete is an Illinois

municipality in Will County, Illinois. (Defs.' Stmt. Facts ¶ 7; Pl.'s Stmt. Facts ¶ 6.)

On June 4, 2006, Hill and his two sons – who are not parties to this lawsuit – were riding in Hill's 1994 Ford pick-up truck when they stopped at a Shell gas station on 1400 East Steger Road in Crete, Illinois. (Defs.' Stmt. Facts ¶¶ 8, 11; Pl.'s Stmt. Facts ¶ 7.) When Hill arrived at the gas station, he pulled up to a gas pump and put $20 of gas into his gas tank after which he and one of his sons entered the gas station. (Defs.' Stmt. Facts ¶ 12; Pl.'s Stmt. Facts ¶ 9.) Thereafter, Hill and his son exited the gas station and got back into the pick-up truck where Hill's other son remained. (Def.'s Stmt. Facts ¶ 14; Pl.'s Stmt Facts ¶ 11.)

Also on that date, Officer Buzan received a notice from police dispatch that someone had seen a man with a gun inside of a vehicle parked at the Shell gas station located at 1400 East Steger Road. (*Id.* ¶ 15.) Apparently, employees at the Shell gas station contacted 911 stating that an individual informed them that he saw a firearm in a vehicle in the Shell parking lot. (Pl.'s Stmt. Facts ¶ 10.) Upon hearing this information from dispatch – along with information that the vehicle at issue was a blue truck with a tarp on the back – Officer Buzan drove to the gas station and was the first police officer to arrive on the scene. (Defs.' Stmt. Facts ¶¶ 16, 17; Pl.'s Stmt. Facts ¶ 12.) Dispatch also advised Officer Buzan of the license plate number of the vehicle, the name of the registered owner, and the make and model of the suspect vehicle. (Defs.' Stmt. Facts ¶¶ 18, 19.) Moreover, dispatch advised Officer Buzan that the truck was backing out of a parking spot and heading towards Steger Road. (*Id.* ¶ 21.) Thereafter, Officer Buzan observed a vehicle matching the description and license number backing out of the parking lot and also reconfirmed the vehicle's information with dispatch. (*Id.* ¶¶ 22, 23.) Although Officer Buzan attempted to activate his siren to pull over Hill's vehicle, he failed to do

3

so. (*Id.* ¶ 27.) Instead, while Officer Buzan was looking down to activate his siren, he did not notice that Hill had started to stop his pick-up truck before turning onto Steger Road. (*Id.* ¶¶ 25, 27; R. 79-1, Pl.'s Ex. A, Buzan Dep., at 48.) Thereafter, Officer Buzan rear-ended the pick-up truck. (*Id.* ¶ 34; Pl.'s Stmt. Facts ¶ 15.)

Officer Buzan then approached the driver's side of Hill's pick-up and asked Hill to exit the vehicle several times after which Hill exited his vehicle. (Defs.' Stmt. Facts ¶¶ 32, 38.) Although Officer Buzan had his hand on his gun while approaching the vehicle, Officer Buzan never took his gun out of his holster and never pointed his gun at Hill. (*Id.* ¶¶ 36, 37; Pl.'s Stmt. Facts ¶ 21.) Other police officers then arrived and asked Hill's sons to exit the pick-up. (Pl.'s Stmt. Facts ¶ 29.) None of these additional police officers had their guns out of their holsters or physically touched Hill. (Defs.' Stmt. Facts ¶¶ 41, 42.) Moreover, none of the police officers, including Officer Buzan, told Hill that he was not free to leave the scene or that he was under arrest. (*Id.* ¶ 44.)[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is

---

[1] Hill's response to Defendants' Rule 56.1 Statement of Fact ¶ 44 is non-responsive, thus and "do[es] not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir. 2000). Accordingly, the Court admits Defendant's statement as true. *See Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir. 2006); *see also Brengettcy v. Horton,* 423 F.3d 674, 681 (7th Cir. 2005) ("failure to respond by the nonmovant as mandated by the local rules results in an admission").

4

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

I.  **Fourth Amendment Claim Against Officer Buzan – Count I**

    A.  **Terry Stop**

First, Hill maintains that Officer Buzan did not have probable cause to justify stopping his vehicle based on the argument that Officer Buzan's actions amounted to a seizure that was tantamount to an arrest. Defendants, on the other hand, argue that Officer Buzan did not need probable cause to stop Hill's vehicle, but only needed a reasonable suspicion to make the stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court agrees.

In support of his argument that Officer Buzan needed probable cause to justify stopping his vehicle, Hill relies on general Fourth Amendment principles, namely, that a seizure occurs if the plaintiff can demonstrate – from all the circumstances surrounding the incident – that a reasonable person would have believed he was not free to leave. *See Belcher v. Norton,* 497

5

F.3d 742, 747-48 (7th Cir. 2007). Here, there is no dispute that Hill was "seized" for Fourth Amendment purposes because a seizure is "an intrusion that is necessarily present in every *Terry* stop." *United States v. Shoals,* 478 F.3d 850, 853 (7th Cir. 2007) (citing *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). Instead, whether Officer Buzan needed probable cause under the circumstances turns on whether Officer Buzan's seizure of Hill exceeded the permissible scope of a *Terry* stop, *see Jewett v. Anders,* 521 F.3d 818, 824 (7th Cir. 2008), an argument Hill fails to make. Instead, Hill argues that Officer Buzan's conduct in stopping his truck and questioning Hill amounted to excessive force, which the Court discusses in detail below.[2]

Meanwhile, the Court examines whether Hill had reasonable suspicion to stop Hill and conduct the subsequent pat-down search. "The Fourth Amendment protects against unreasonable searches and seizures. Police are permitted, however, to make investigatory stops limited in scope and executed through the least restrictive means reasonable, referred to as *Terry* stops." *United States v. Grogg,* 534 F.3d 807, 810 (7th Cir. 2008). Whether a *Terry* stop is lawful depends on the police officer's ability to produce facts giving rise to a reasonable, articulable suspicion that a person has been, is, or is about to engage in criminal activity. *See id.*; *Hardrick v. City of Bolingbrook,* 522 F.3d 758, 762 (7th Cir. 2008). "Reasonable suspicion is more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence.'" *Jewett,* 521 F.3d at 823 (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct.

---

[2] Based on Officer Buzan's conduct as discussed under the excessive force analysis, Officer Buzan's *Terry* stop did not turn into an "arrest" under the circumstances because Officer Buzan's alleged use of force was not disproportionate to the purpose of the *Terry* stop. *See Jewett v. Anders,* 521 F.3d 818, 824 (7th Cir. 2008) (inquiry is whether officer's actions were reasonable in light of all the circumstances).

6

673, 145 L.Ed.2d 570 (2000)). When evaluating the reasonableness of a *Terry* stop, the Court examines the totality of the circumstances known to the officer at the time of the stop. *See Grogg,* 534 F.3d at 810; *United States v. Hicks,* 531 F.3d 555, 558 (7th Cir. 2008) (whether officer has reasonable suspicion is objective inquiry).

Looking at the totality of circumstances known to Officer Buzan at the time of the stop, it is undisputed that after the dispatch officer received a 911 call about a firearm in a vehicle parked at the Shell gas station, dispatch notified Officer Buzan about the vehicle parked at the Shell gas station located at 1400 East Steger Road. Upon hearing this information from dispatch – along with information that the vehicle at issue was a blue truck with a tarp on the back – Officer Buzan drove to the gas station. Also, dispatch advised Officer Buzan of the vehicle's license plate number, the name of the registered owner, and the make and model of the truck. Moreover, dispatch advised Officer Buzan that the truck was backing out of a parking spot and heading towards Steger Road. Officer Buzan then observed a vehicle matching the description and license plate number backing out of the parking lot and reconfirmed the vehicle's information with dispatch. Officer Buzan then attempted to stop the vehicle, but instead rear-ended the pick-up because he was looking down to activate his sirens.

Based on these circumstances, Officer Buzan had reasonable suspicion to stop Hill's pick-up truck. Initially, an individual contacted 911 to report that a firearm was in a vehicle parked at the Shell gas station. *See United States v. Drake,* 456 F.3d 771, 775 (7th Cir. 2006) (courts "presume the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion"). In addition, there were no inconsistencies between the dispatcher's description of the suspect vehicle – including the license plate number

7

and movement of the pick-up – and Hill's vehicle. Finally, under well-established law, the Court must determine the reasonableness of Officer Buzan's conduct in light of the information he knew at the time of the stop – not whether he knew the truth or whether he should have known more. *See Hicks,* 531 F.3d at 560. Indeed, as the police investigation later revealed, the person who witnessed the alleged gun in Hill's pick-up had mistaken Hill's cane for a firearm. (Pl.'s Ex. A, Buzan Dep., at 99.) At the time of the stop, however, Officer Buzan reasonably believed that Hill had a gun in his vehicle. Based on the circumstances known to Officer Buzan at the time of the stop, he had a reasonable, articulable suspicion that a person had been, was, or was about to engage in a criminal activity. *See Grogg,* 534 F.3d at 810. Therefore, Hill's first argument fails.

**B.     Excessive Force**

Next, Hill asserts that Officer Buzan's conduct constituted excessive force arguing that Officer Buzan: (1) intentionally rear-ended his truck; (2) failed to follow the Village of Crete's written procedures for high risks stops; (3) called him racial epithets; and (3) forcefully touched him. Excessive force claims invoke the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Whether the force used to effectuate a seizure is reasonable is determined by looking to the particular facts and circumstances of the case and considering whether it was objectively reasonable (without the benefit of hindsight) for an officer to conclude that 'the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007) (quoting *Graham*, 490 U.S. at 396-97). Simply put, "the question is whether the officers' actions

8

are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397; *see also Chelios v. Heavener,* 520 F.3d 678, 689 (7th Cir. 2008) (courts engage in balancing test regarding nature and quality of intrusion on individual's Fourth Amendment interests against governmental interests).

First, Hill's allegation that Officer Buzan intentionally rear-ended his pick-up truck is not supported by the undisputed facts in the record. Specifically, the record indicates that when Officer Buzan was attempting to activate his siren to pull over Hill's vehicle, he was looking down at which time Hill had started to stop his pick-up truck before turning onto Steger Road. It was at this point that Officer Buzan's squad car bumped into Hill's pick-up truck. Hill's argument that it was a "major impact" is belied by undisputed evidence that he did not request any medical assistance at the scene of the stop and that he drove his pick-up from the scene. (Def.'s Stmt. Facts ¶¶ 43, 45.)

Moreover, Hill's argument that Officer Buzan failed to follow the Village of Crete's written procedures for high risk stops is immaterial because the Court's inquiry is whether the alleged use of force was objectively unreasonable under the circumstances. *See Thompson v. City of Chicago,* 472 F.3d 444, 454 (7th Cir. 2006). As the Seventh Circuit has explained, police procedures may give police administrators the framework to evaluate police officers, but such procedures shed "no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." *Id.*

Hill also asserts that Officer Buzan used racial slurs during the *Terry* stop. Assuming

9

that Hill's allegations are true – a fact that Officer Buzan denies – any such comments are certainly unprofessional and inexcusable, but do not necessarily amount to a deprivation of a constitutional right, including excessive force. *See DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000); *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir. 1987).

Moreover, Hill's allegations that Officer Buzan pulled him from the truck and then pushed him into the truck are contradicted by undisputed evidence that Hill eventually exited his vehicle on his own accord after Officer Buzan requested him to do so several times. Even if Hill's allegations were true, Officer Buzan's conduct was not unreasonable because he believed that Hill had a firearm and after getting Hill out of the pick-up truck, Officer Buzan could then conduct a pat-down and search to determine if Hill was indeed armed, thus minimizing the danger to himself and others. *See Jewett,* 521 F.3d at 826; *Smith v. Ball State Univ.,* 295 F.3d 763, 770 (7th Cir. 2002). In other words, the amount of force Officer Buzan allegedly used was permissible because Officer Buzan reasonably believed that there was a firearm in Hill's pick-up and he had to request Hill to exit the vehicle several times. *See Smith,* 295 F.3d at 770 ("amount of permissible force depends upon the specific situation, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'") (citing *Graham,* 490 F.3d at 396).

Viewing the facts in Hills' favor – as the Court is required to do at this procedural posture – and looking to the facts and circumstances of this case at the time of the *Terry* stop, Officer Buzan reasonably thought that Hill had a firearm in his pick-up. Officer Buzan approached Hill's pick-up with his hand on his gun, but never took his gun out of his holster and

never pointed his gun at Hill. After he requested Hill to exit the vehicle several times, Hill finally did so. Officer Buzan never told Hill he was not free to leave the scene or that he was under arrest. Indeed, Hill left the scene on his own volition. Under these circumstances, the Court would be hard-pressed to conclude that Officer Buzan used greater force than was reasonably necessary to effectuate the *Terry* stop. *See Chelios*, 520 F.3d at 689. In short, Officer Buzan's actions were objectively reasonable under the circumstances. *See Graham,* 490 U.S. at 397. As such, the Court grants Defendants' summary judgment as to Count I of the Second Amended Complaint.

Because Officer Buzan did not violate Hill's Fourth Amendment rights, the Court need not address Officer Buzan's qualified immunity arguments. *See Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir. 2007).

## II.     Fourth Amendment Claim Against Unknown Officers – Count II

In Count II of the Second Amended Complaint, Hill alleges that unknown police officers violated his Fourth Amendment rights. Hill, however, makes no arguments concerning the unknown officers in his legal memorandum to this Court, thus abandoning his claim against the unknown officers. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal memorandum amounts to abandonment of claim). Therefore, the Court grants Defendants' summary judgment motion as to Count II of the Second Amended Complaint.

## III.    Fourth Amendment Claim Against Village of Crete – Count III

Finally, the Court addresses Hill's Fourth Amendment Claim against the Village of Crete. *See* 42 U.S.C. § 1983. Under Section 1983, a government municipality cannot be liable under the theory of respondeat superior. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S.

658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("municipality cannot be held liable *solely* because it employs a tortfeasor") (emphasis in original). In other words, "units of local government are responsible only for their policies rather than misconduct by their workers." *Fairley v. Fermaint*, 482 F.3d 897 (7th Cir. 2007). Thus, to establish liability against the Village of Crete, Hill must show that (1) he suffered a deprivation of a federal right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that (3) proximately caused his constitutional injuries. *Ovadal v. City of Madison,* 416 F.3d 531, 535 (7th Cir. 2005). Unconstitutional policies or customs include: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that constitutes a custom or usage; or (3) an allegation that a person with final policymaking authority caused or ratified the constitutional injury. *Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008).

Here, Hill fails to set forth any facts supporting a *Monell* claim. Indeed, he admits that he is not aware of any practices, customs, or policies of the Village of Crete police department against African Americans. (Defs.' Stmt. Facts ¶ 47.) Nevertheless, Hill argues that the Village of Crete is liable because Officer Buzan is an employee or agent of the Village – a proposition that the United States Supreme Court and the Seventh Circuit have unequivocally rejected. *See Monell,* 436 U.S. at 691 ("a municipality cannot be held liable under § 1983 on a respondeat superior theory"); *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (municipality cannot be vicariously liable under Section 1983). Therefore, Hill's claim against the Village of Crete fails.

# CONCLUSION

For these reasons, the Court grants Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  The Court denies Defendants' Objection to Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Facts as moot.

**Dated:** October 6, 2008

                               **ENTERED**

                            _____
                            **AMY J. ST. EVE**
                            **United States District Court Judge**